**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR-10-1578-PHX-SRB (DKD) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Leon Tommie, | ) | |
| Defendant. | ) | |

      This case arises on the Government's Motion to Reopen Detention Hearing, seeking to reopen the issue of detention for Leon Tommie ("Defendant") pursuant to 18 U.S.C. § 3142(f)(2). (Doc. 21) Defendant has responded in writing opposing the Government's Motion, doc. 25, to which the Government has replied, doc. 27. The Motion to Reopen will be granted and Defendant shall remain detained.

**I. Background**

      The parties do not dispute that Defendant was arrested in Hollywood, Florida on this Arizona indictment and warrant on Friday, March 25, 2011 and initialed before a magistrate judge in the United States District Court, Southern District of Florida, Miami Division. (Docs. 5, 10) The March 30, 2011 hearing transcript confirms that Defendant appeared with counsel for a detention and "removal" hearing before Magistrate Judge Lurana S. Snow. (Doc. 24-1 at 1-6) The Florida prosecutor advised Judge Snow that the parties had reached a stipulation that "Mr. Tommie is going to waive removal and agree to

go back to Arizona. I think we also have an agreement to a bond. That would be a $25,000 ten percent bond and a $75,000 personal surety bond, and it will be co-signed by his girlfriend. They have been together for 8 or 9 years. She is in court today." (*Id*. at 2) Defendant and his girlfriend have three children together and he receives money from the Seminole Tribe. (*Id.*) Defendant's girlfriend "posted bail in the amount of $75,000 [personal surety bond] and a $25,000-10% cash bond which was approved by the United States Magistrate Judge." (Doc. 5-1 at 1) The transcript does not mention the March 25, 2011 Pretrial Services Report, doc. 31, but, consistent with the practice by magistrate judges and federal practitioners at detention hearings, everyone in Florida presumably relied on this PTS Report, which ultimately was found to be significantly incomplete as to Defendant's criminal history. After signing the bond and upon payment of the $2500 cash bond, Defendant was released on March 30, 2011 with release conditions. (Docs. 6-7)

Defendant was served in Florida with a District of Arizona summons on May 5, 2011 to appear in Phoenix on May 19, 2011 before Magistrate Judge David K. Duncan. (Doc. 13) The docket reflects Defendant "missed his connecting flight and won't be arriving in Phoenix until after the close of business [on May 19]." (Doc. 14) Prospective defense counsel requested Defendant's initial appearance and arraignment be continued to the next day before Magistrate Judge Michelle H. Burns with no objection from the Government. (*Id.*) Defendant appeared on May 20, 2011, counsel was appointed, a plea of not guilty was entered to the single count in the indictment. (Doc. 15) Judge Burns was advised, however, that because Defendant has active Arizona warrants for Defendant's arrest, Defendant was remanded into the custody of the U.S. Marshal Service and temporarily detained. (*Id.*) On June 3, 2011 and after several status hearings,[1] the Government filed its Motion to Reopen

---

[1] During this period of time, Defendant, through his attorney and representatives, was attempting to post bonds or otherwise quash the four active warrants for Defendant's arrest. He was purportedly successful in posting bond for the traffic misdemeanors in Kearny Justice Court and quashing the January 26, 2011 warrant. According to his AFPD, Defendant is unable to post bonds and quash the felony warrants on the Maricopa County Superior Court matters because he must physically appear in Superior Court to do so.

- 2 -

Detention Hearing. (Doc. 21)

**II. Motion to Reopen Detention**

"The Bail Reform Act . . . , 18 U.S.C. §§ 3141–3150, authorizes and sets forth the procedures for a judicial officer to order the release or detention of an arrested person, pending trial, sentence, and appeal." *United States v. Whitlock*, 2011 WL 1843007, * 1 (D.Ariz., May 16, 2011(citing in footnote 3 David N. Adair, Jr., Federal Judicial Center, *The Bail Reform Act of 1984* (3rd Ed. 2006), p. vii.). Under the Act, an accused is ordinarily entitled to pretrial release, with or without conditions, unless the district court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b), (c), and (e). Subsection (g) of § 3142 sets forth the general factors that a court must consider "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." These factors include the nature and circumstances of the charged offense, the weight of the evidence, the history and characteristics of the person, and the nature and seriousness of the danger posed by the person to the community upon release. 18 U.S.C. § 3142(g).

Title 18 U.S.C. §3142(f) expressly provides that a detention hearing:

> may be reopened at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. §3142(f); *United States v. Jacquot*, 2011 WL 1636943, * 2 (S.D.Cal., April 29, 2011); *United States v. Simpson*, 2010 WL 129793, * 3 (D.Utah, January 8, 2010). Thus, the "movant", whether prosecutor or defendant, must establish: 1) that information now exists that was not known to the movant at the time of the initial detention hearing, and 2) the new information is material to release conditions regarding flight or dangerousness. *United States v. Bowens*, 2007 WL 2220501, * 1 (D.Ariz., July 31, 2007) (citing *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989) (testimony of defendant's family and friends is not new evidence to

1 warrant reopening of detention).

2 The rationale for the rule is discussed in *United States v. Flores*, 856 F. Supp. 1400 (E.D.Cal. 1994) wherein a defendant's motion to reopen detention hearing was denied. "A rule that would not discourage a party for failing to acquire *readily available evidence* for presentation the first time is a rule that encourages piecemeal presentations. Judicial efficiency is not served by such a practice." *Bowens*, 2007 WL 2220501 at 2 (emphasis added). *See also, United States v. Ward*, 235 F.Supp.2d 1183, 1185 (N.D.Okl. 2002) (in denying a motion to reopen the issue of pretrial detention, magistrate judge observed that "the proffered information about Defendant's background, ties to the community and employment history were all known" at the time of the detention hearing) (citing *United States v. Dillon*, 938 F.2d 1412 (1st Cir. 1991)).

"Once a hearing is reopened, it is this [Magistrate Judge's] position that it is reopened for the purpose of the court's receiving any information, within reason, not submitted at the original detention hearing." *United States v. Barksdale*, 2008 WL 2620380, * 2 n. 3 (E.D.Cal., July 1, 2008) "The purpose of such a rule is to allow the new information justifying reopening to be considered in context, taking into account information either side may have gathered. Any information presented is of course subject to the court's own weighing of the evidence in light of all relevant factors, including the timing of its disclosure." (*Id.*)

**III. Discussion**

After considering counsels' arguments, legal authorities, and proffers, the Court finds that information exists now that was not known to the Florida federal prosecutor and Pretrial Services officer at the time of the detention hearing in Florida was scheduled on March 30, 2011 that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of Defendant as required and the safety of any other person and the community.

The Florida Pretrial Services Report, doc. 31, was incomplete. First, it did not reveal to the Florida magistrate judge that Defendant had *five active warrants* out of Arizona.

- 4 -

1  Nothing in the Florida PTS Report discloses any active warrants existed for Defendant. In
2  fact, in the disposition section only three of his Arizona cases were identified in the Florida
3  PTS Report, two of them reflected "disposition unavailable," and one indicated "no info"
4  and "guilty, 7 days jail." Thus, not only were the Defendant's numerous failures to appear
5  in Arizona cases not known or readily available to the Florida prosecutor and Pretrial
6  Services officer at the time of the initial detention hearing, they were completely missing
7  from the March 25, 2011 PTS Report. (compare sealed doc. 17 with the March 25, 2011
8  report, doc. 31)  Second, the Florida PTS Report does not reflect any felony convictions
9  when Defendant has two from Arizona in 2006: CR2006-114424-001 for Possession of Drug
10 Paraphernalia and CR 2006-115960-001 for Endangerment. Third, the Florida Report
11 contains no information about the underlying allegation that Defendant is facing here in
12 Arizona. Of course, this is one of the factors a judge *must* consider under 18 U.S.C. §
13 3142(g) before a defendant is released back into a community.

14 Citing *United States v. Flores*, 856 F. Supp. at 1406, defense counsel argues
15 that the Government, as the movant, "must present not only new information, but must
16 establish *good cause* why such information was not presented initially at the earlier
17 scheduled detention hearing." (Doc. 25 at 2) (emphasis added). The Court disagrees that the
18 Act requires a showing of good cause why new information was not presented initially at the
19 earlier scheduled detention hearing.

20 While *Flores* does use the words "good cause", it was in the context of
21 explaining why Magistrate Judge Hollows disagreed with the opinion of the author of a
22 treatise on the Bail Reform Act and explaining, by analogy to Rule 60(b), "[g]enerally,
23 reconsideration of a decided matter based on the presentation of additional evidence requires
24 good cause for the failure to present that evidence" or the failure to exercise diligence in
25 locating witnesses before criminal trial precludes new trial based on newly-discovered
26 evidence, citing *United States v. Oliver*, 683 F.2d 224 (7th Cir. 1982).

27 Defense counsel disagrees that Defendant's criminal history information in the
28 disposition section of the Florida PTS Report, doc. 31 at 3, was not available online and

- 5 -

1 points out it "should have been available to the Florida court because it was readily available
2 on the public access web page of the Maricopa County Superior Court. (Doc. 25 at 3, Exhibit
3 1) "A five-minute review of that web page shows that there are two cases attributable to
4 Leon Tommie." (*Id.*)  The Court agrees with defense counsel that those federal and state
5 judges, pretrial services officers, and criminal law practitioners who live and work in
6 Maricopa County know, or should know, how to locate public information on most criminal
7 cases by accessing www.superiorcourt.maricopa.gov/docket/criminalcases/ and entering a
8 defendant's name. The Court cannot explain why a Florida prosecutor or Pretrial Services
9 officer could not discover online the existence of Defendant's two petitions to revoke
10 probation were filed and pending in Maricopa County Superior Court through any reliable
11 search engine like Google. The Court finds, however, that it is not reasonable to strictly
12 construe the Act so narrowly that an out-of-district prosecutor's or pretrial services officer's
13 failure to discover relevant information about a defendant online when new information is
14 presented to a magistrate judge in the prosecuting district such that the release of that
15 defendant jeopardizes public safety and the defendant appearance at future court
16 proceedings.

17 This is not a case or situation described in *Flores* where "the government
18 [has made] repeated motions for detention because it ha[d] initially failed to present evidence
19 that was readily obtainable . . . The government should not be allowed to schedule seriatim
20 hearings for detention until it 'gets it right.'" 856 F. Supp. at 1406. The Court concludes that
21 absent a complete lack of diligence, which is not the situation here, unintentional errors of
22 omission in an out-of-district pretrial services report should have the same bearing and
23 weight on reopening detention as inaccurate information has provided, of course, the missing
24 information is material to the issue of detention or release. *See*, *United States v. Calvin*, 2008
25 WL 853608 (D.Ariz., March 27, 2008) (misinformation in pretrial services report regarding
26 defendant's criminal history "found a material change in circumstances . . . [to] consider *ab*
27 *initio* the issue of detention."). To hold otherwise would have two adverse consequences on
28 the administration of justice. First, it would turn detention hearings into much longer mini-

1 trials lest someone might latter argue an attorney or pretrial services officer "should have
2 known this" or "could have done that," adding further delay and expense to the district
3 courts' heavy dockets. Second, public safety or individual liberty interests might be
4 jeopardized if the standard to reopen a person's release or detention were too high.

5         The Court finds that Defendant's Arizona criminal history is information that
6 now exists that was not known to the Florida prosecutor at the time of Defendant's initial
7 detention hearing, was not contained in the Florida Pretrial Services Report, doc. 31, and
8 is material to release regarding flight or dangerousness. The Court will grant the
9 Government's Motion to Reopen Detention Hearing.

10 **IV. Detention or Release**

11         On reconsideration whether Defendant should be detained or released, the
12 Court further finds as follows:

13         1. According to the Government's proffer, it has a very strong case against
14 Defendant for the crime of Felon in Possession of a Firearm, based upon Defendant's
15 admissions against interest, eye-witness testimony, scientific evidence tying shell casings
16 found at the scene of a shooting to the weapon allegedly found in Defendant's vehicle when
17 he was arrested.

18         2. While not charged at this time with aggravated assault or other crime of
19 violence, the Government proffered that Defendant did not just possess a firearm, he
20 discharged it between one to three times on September 22, 2009. The Government claims
21 Defendant admitted that he shot one round toward the "Great Lakes [area]" in the Whiteriver
22 area of the White Mountain Apache Indian Reservation in eastern Arizona and another round
23 toward a witness, named Mario, with whom Defendant had been fighting. Mario allegedly
24 remembers Defendant firing two shots at him and the house near where he was standing.

25         3. Defendant has a history of abusing alcohol and using illicit drugs.

26         4. Defendant was on "double felony probation" with the Maricopa County
27 Superior Court on September 22, 2009 when Defendant possessed the .25 caliber firearm as
28 alleged in the indictment, doc. 1.

1    5. Defendant has a history of failing to comply with court orders and failing
2 to appear as ordered by multiple courts in Florida and Arizona. According to the May 17,
3 2011 Supplemental PTS Report, doc. 17, nearly every time Defendant has been charged with
4 a felony or misdemeanor, he failed to appear and a warrant was issued, allegedly violated
5 his probation, or fled from police. If Defendant were released from custody in this case, there
6 is an unacceptably high risk that Defendant will not appear at future court proceedings and
7 comply in good faith with all conditions of release. *United States v. Hir*, 517 F.3d 1081,
8 2008 WL 445840 at * 9 (citing *United States v. Tortora*, 922 F.2d 880, 886 (1st Cir. 1990)).
9    6. Due to being on probation with a moderate criminal history category,
10 Defendant has a strong incentive to flee due to the likelihood of a significant prison sentence
11 if he is convicted. *United States v. Townsend*, 897 F.2d. 989, 995 (9th Cir. 1990) ("[F]acing
12 the much graver penalties possible under the present indictment, the defendants have an even
13 greater incentive to consider flight.")
14    Based upon all of the foregoing, the evidence presented at the detention
15 hearing, and all factors set forth in 18 U.S.C. § 3142(g),
16    The Court further finds that the Government has sustained its burden of proof
17 by clear and convincing evidence that the Defendant is a danger to the community or other
18 persons if released, is a serious flight risk by a preponderance of the evidence, and that no
19 condition or combination of conditions would reasonably assure the safety of the community
20 or other persons and the appearance at future court proceedings if Defendant were released.
21    Accordingly,
22    **IT IS ORDERED** that the Government's Motion to Reopen Detention
23 Hearing, doc. 21, is **GRANTED**.
24    **IT IS FURTHER ORDERED** that Defendant shall remain detained as a
25 danger to the community and a serious flight risk until further order of the assigned District
26 Judge, the Honorable Susan R. Bolton.
27    **IT IS FURTHER ORDERED** that the time from the filing of this Motion
28 through the date of this Order is excluded from the calculation of the time under the Speedy

Trial Act. 18 U.S.C. § 3161(h)(1)(D); *United States v. Tinklenberg*, ___ U.S. ___, 2011 WL 2039366 (June 6, 2011).

Dated this 20th day of June, 2011.

*Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge